## Mullins, &c. *vs* Wall, &c.

### ERROR TO THE GARRARD CIRCUIT.

#### *Wills. Emancipation. Slaves.*

CHANCERY.

*Case* 109.

*June* 28.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Case stated.

IN this case, Cain and Dorcas, persons of color, have attempted to establish their right to freedom, under a paper executed by their former owner, Rebecca Mullins, and which, after having been offered for probate as a will, in the county Court, and there rejected, was destroyed by B. Mullins, the subscribing witness, who was also one of the two heirs of the decedent.

There is no doubt, upon the evidence, that Rebecca Mullins did execute a paper intended to emancipate her slaves, and which, if effectual, would have made Cain and Dorcas free. But that paper is no otherwise spoken of in this record, than as a will, or a paper purporting to be a will. And as in that character it was rejected by the County Court, which had exclusive original jurisdiction of its probate, it cannot, so long as the sentence of rejection remains in force, be set up as a will, in any collateral proceeding to establish the rights which it professes to grant: *Jacob* vs *Pulliam*, (3 *J. J. Marshall*, 200;) *Chastine* vs *Ford*, (5 *Littell*, 263, *&c.*) And even if it were conceded that the destruction of the paper after its rejection, by one of the parties interested against its establishment as a will, might operate to divert the proceeding from the ordinary course of appeal or writ of error, and to give jurisdiction to the Chancellor to establish the instrument, or its contents as a will; still the Chancellor in taking the place of the Court of probate, if he may dispense with some of its rules as to the mode of proof, cannot dispense with those requisites which the law itself has made essential to the validity of wills. And, as by law a devise of slaves, or a devise to them of their freedom, must be executed with the same forms of attestation, and un-

A will by which slaves are emancipated, must be executed with the same forms of attestation and under the same solemnities as a will for devising lands. The chancellor cannot, on account of fraudulent destruction of a testamentary paper, give effect to it unless the proof authorize the conclusion that it was attested by two witnesses subscribing in his presence.

der the same solemnities as a devise of lands, the Chan-cellor cannot, on account of the fraudulent spoliation or destruction of a testamentary paper, give effect and va-lidity to it as a will, unless the proof authorizes him to conclude, either that it was wholly written and signed by the testator, or that it was attested by two witness-es subscribing in his presence: *Chisholm* vs *Ben*, (7 B. *Monroe*, 408.) And although, as it is proved that there were two subscribing witnesses to the paper in ques-tion, one of whom proved its execution, it might be presumed, upon proof of the hand writing of the other, who is dead, that he also attested the execution of the instrument; yet,as the same evidence which proves his signature as a witness, proves also, that when called on in Court as the second witness to prove the will, he swore that he was not in the presence of the maker when he signed it, all presumption of the proper execu-tion and attestation of the instrument as a will is done away, unless the statement of this second witness were impugned, and some proof or reasonable presumption furnished of a proper attestation by him.

It is true that Cain and Dorcas, one of whom was an infant of tender years, and the other not born when the paper was presented as a will, are not precluded by its presentation and rejection, from saying that it was not a will, nor a testamentary paper, but a deed or in-strument of writing emancipating them. But although they, professing ignorance of its real character, say that it was a deed or a will, and although considering their condition and ignorance, and that the paper has been destroyed by the opposite party, it might, on this allega-tion, be established or made effectual as a deed, if it were proved to be such; yet as there is no evidence that it was intended to operate as a deed, but it is rep-resented as a paper purporting to be a will, we do not feel authorized, as a Court of equity, to set it up and give it effect upon proof of its execution, which though sufficient to establish it as a deed or instrument of emancipation, *intervivos* is not sufficient to establish it as a will. This would, in effect, nullify the requisitions of the law with respect to wills or devises of slaves.

There is then, as we conceive, but one possible ground on which the paper or its contents can now be set up in a Court of equity. And that is, that the offer to prove it in the Court of probate was a sham and fraudulent offer, made by combination between the two subscribing witnesses, who were the only brothers, and heirs of the testatrix, for the purpose of precluding the beneficiaries under the will from afterwards establishing it. We are of the opinion, that upon a case of this sort, properly made out, and upon the fact that the paper itself was afterwards destroyed by one of the brothers, the appropriate relief might be afforded in equity, by the establishment of the will, or of the rights which it confers. Nor are circumstances wanting which would authorize the inference of fraud in the two subscribing witnesses, the assumption of which would lead fairly to the presumption against them, that the instrument had been properly executed and attested.

It appears that the slaves were the only property of the decedent; that her two brothers were, or claimed to be her only heirs; that they were averse to the emancipation of the slaves; and yet, that they were the only witnesses to the instrument executed for that purpose, and which, according to an intimation in the evidence, was written by that one who stated in Court that he had not signed it in the presence of his sister, but who may nevertheless, and without the commission of perjury, have signed it under such circumstances as that the law would adjudge the attestation to have been in her presence. His statement, according to the present testimony, was "that he was not with, or in the presence of Rebecca Mullins when he signed the instrument," which was thereupon given up to the other witness who had presented it, and by whom it was afterwards burnt. It further appears, that notwithstanding the rejection of the will, the eldest of the negroes intended to be emancipated thereby, and who was the mother of the others, brought an action against one of the brothers, which was defended by both, in which she established her freedom. Upon which she took her children to live with her, and all were for some time regarded

But where the will had been destroyed by one of the subscribing witnesses, who with another subscribing witness, were the only heirs of the testatrix, and the persons emancipated being infants, and other circumstances, the Court inferred its due execution, and that an offer to prove the will as such was a fraudulent device to cheat the slaves out of their freedom, and declared the proof sufficient to sustain a decree of freedom.

as free. But the mother having died in a year or two, the brother who had offered the will, asserted a claim against his sister, which he had previously disavowed, and procuring a stranger to become administrator for the purpose, although he had at first told the Court there was no need of an administrator, obtained a judgment against him for $100, and had the negro children taken in execution; that they were all, three in number, purchased for eleven years for the debt; that the other brother and witness, whose testimony had defeated the probate, proposed at this sale that he and a third person should purchase them and run them off to a distant State, where they could not establish their freedom.

These and other circumstances show that there is little probability that there was a fair trial of the question upon the will in the Court of probate, and that the beneficiaries then under disability, should not be precluded by the rejection of the will, when it was attested by their antagonists in interest, offered for probate by one of them, and defeated by the general statement of the other, without, so far as appears, any cross examination which might elicit the particulars, or any person present who was interested in establishing the will. And as each of these interested witnesses showed himself capable of resorting to improper devices for the purpose of injuring the beneficiaries under the will, we think there is fair ground for the presumption, that the instrument subscribed by both as attesting witnesses, was, as it appeared to be, executed and attested in proper form of law.

Cain and Dorcas do not, it is true, specify in their pleadings, the facts or the particular ground of relief above set forth. But they profess an ignorance which may be readily excused, and they put to the defendants special interrogatories, in regard to the nature and condition, and custody of the paper in question, which they fail to answer, although one of them at least, was privy to all the facts. The complainants alledging ignorance of particulars, assert a right to freedom under a deed or will which had been rejected when offered as a will, for causes unknown to them; and charging a

fraudulent attempt by the defendants to hold them in, or subject them, to slavery, they call upon them to answer interrogatories. The defendants content themselves with a general denial of the alledged right to freedom, and of any deed or will emancipating the complainants, and of any fraudulent attempt to enslave them. We are of opinion that under the circumstances of ignorance and disability on the part of the complainants, and under the broad issue which the defendants have purposely made, the complainants may well rely, in this case, upon all facts and circumstances which tend to support their side of the issue.

Wherefore, the decree establishing the right of Cain and Dorcas to freedom, is affirmed.

*McKee* and *Robertson* for plaintiffs; *Bradley* for defendants.